UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ILLINOIS TOOL WORKS INC.,
    *Plaintiff*,

v.

J-B WELD COMPANY, LLC,
    *Defendant*.

No. 3:19-cv-01434 (JAM)

**ORDER RE J-B WELD'S EMERGENCY MOTION FOR PARTIAL STAY**

Plaintiff Illinois Tool Works Inc. (ITW) has sued defendant J-B Weld Company, LLC (J-B Weld) for infringement of ITW's registered mark, "MUFFLER WELD," among other things. On December 12, 2019, I granted ITW's motion for a preliminary injunction. *See Illinois Tool Works Inc. v. J-B Weld Co., LLC*, -- F. Supp. 3d. --, 2019 WL 6765761 (D. Conn. 2019). Among the injunctive remedies I ordered was the immediate recall of J-B Weld's MufflerWeld-branded muffler sealant product. *Id.* at *19.

J-B Weld has now filed an emergency motion for a partial stay pending appeal of the injunction to the extent that the injunction requires an immediate recall of its MufflerWeld-branded muffler sealant product. Doc. #50. ITW opposes the motion. Doc. #53.

In light of the parties' arguments and new information presented, I conclude that the injunction should be modified in part to relieve J-B Weld of an obligation to effectuate an immediate recall of its MufferWeld-branded muffler sealant product from AutoZone stores or other retail outlets. Instead, I will allow J-B Weld until January 21, 2020, either to issue a recall for its MufflerWeld-branded muffler sealant product from AutoZone or to furnish AutoZone with corrective labels so that the remaining inventory of MufflerWeld-branded muffler sealant may be sold without infringing ITW's trademark. In light of this modification of the terms of the

preliminary injunction, I will deny J-B Weld's motion for a stay of the recall provision pending appeal.

## BACKGROUND

According to J-B Weld, it will comply with those provisions of the preliminary injunction that bar it from selling its muffler sealant using the name MufflerWeld by placing adhesive labels over the MufflerWeld mark on all outgoing tubes of its muffler sealant until new tubes can be printed and obtained. Doc. #50-1 at 4. But J-B Weld notes that it will have considerably more difficulty complying with the injunction insofar as it requires J-B Weld to recall an estimated 32,000 tubes of its product that are on sale at as many as 5,500 AutoZone stores nationwide. *Ibid.* J-B Weld contends that it would require several months and cost more than $300,000 to effectuate a recall of these products. *Ibid.*

According to J-B Weld, it would suffer irreparable harm to its business relationship with AutoZone if required to comply with the Court's order to effectuate an immediate recall of its product from thousands of AutoZone stores. ITW responds that it does not insist that J-B Weld physically recall all of its infringing products from AutoZone and would not object to J-B Weld's relabeling of its existing infringing inventory at AutoZone stores. Doc. #53 at 3.

## DISCUSSION

"The standard in this circuit for a stay or injunction pending appeal is (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994).

As to the irreparable-harm and substantial-possibility-of-success factors, J-B Weld argues that my prior ruling did not conduct a specialized inquiry into whether a product recall was

2

warranted. Although J-B Weld did not previously request this inquiry despite being on notice that ITW had expressly sought a recall as part of its requested injunction order (Doc. #4-3 at 2), I will exercise my discretion at this time to specifically consider whether a recall order is appropriate, in light of the fresh facts supplied by J-B Weld and ITW, as well as whether I should *sua sponte* modify the recall order with respect to J-B Weld's product that is presently at AutoZone stores. *See generally Modification of Injunctions*, 11A Fed. Prac. & Proc. Civ. § 2961 (3d ed.) (collecting cases concerning grounds for modifications to injunctions).

Recall is an "extreme remedy," *Conopco Inc. v. 3DO Co.*, 1999 WL 1277957, at *3 (S.D.N.Y. 1999), and, "[o]f course, a district court should carefully consider the likely burden and expense of a recall before it imposes the remedy." *Perfect Fit. Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 807 (2d Cir. 1981). In deciding whether to order a product recall as part of a preliminary injunction, a court should consider factors including "the defendant's good faith or bad faith, the likelihood of diversion of customers from plaintiff to defendant, the extent of the burden entailed in a recall including the breadth of distribution and the shipping costs, and the probability that the plaintiff would benefit from such an order." *Cherry River Music Co. v. Simitar Entm't, Inc.*, 38 F.Supp.2d 310, 322 (S.D.N.Y. 1999); *see also Tecnimed SRL v. Kidz-Med, Inc.*, 462 F. App'x 31, 35 (2d Cir. 2012) (noting "that district court should consider relative benefit to trademark owner and burden to infringer when determining whether product recall is appropriate remedy").

I have considered all of these factors. As to good or bad faith, my prior ruling described at length the evidence of J-B Weld's bad faith infringement. *See ITW*, 2019 WL 6765761, at *10-11. J-B Weld argues, however, that I overlooked precedent suggesting that the relevant inquiry for bad faith is not whether a defendant intentionally copied a mark, but whether the

3

defendant intentionally set out to confuse consumers as to the manufacturer or supplier of their product; no customers, it claims, would believe that J-B Weld's MufflerWeld was made by ITW owing to the presence of the J-B Weld house trade dress and house mark on J-B Weld's product.

I do not agree. As explained in the very case J-B Weld cites in its motion, the bad faith inquiry looks to whether defendant was "deceiving customers into believing that its products were *related to* the plaintiff." *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 388 (S.D.N.Y. 2008) (emphasis added) (quoting *New York Stock Exch., Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 556 n.1 (2d Cir. 2002)). There was concededly no evidence that J-B Weld intended to draw on the positive brand reputation of the *ITW* brand (or the "VersaChem" house mark that appeared on ITW's MUFFLER WELD product); had J-B Weld wanted to do that, it would have copied the house marks (here, "VersaChem"). Instead, the reputation J-B Weld sought to trade on was that of the mark I concluded J-B Weld likely infringed: plaintiff's product, MUFFLER WELD the chemical.

By using the identical mark with its house brand when it knew the senior mark was registered, J-B Weld sought to trade on the MUFFLER WELD product's reputation by giving its product the same name, and thus deceiving customers into believing that J-B Weld's muffler sealant was related to the plaintiff's muffler sealant, trading on MUFFLER WELD's existing reputation, built up over forty years, as a chemical suitable for the patching and sealing of mufflers.

This is source confusion much as if a generic supermarket began to sell circular mostly-oat cereal under the word mark "Cheerios," *see* CHEERIOS, U.S. Trademark No. 414,338 (Jan 12, 1945) (owned by General Mills), even if that generic supermarket used its house brand on the trade dress of the box. In this example, the generic supermarket is not trying to fool customers

4

into believing that its product is manufactured by General Mills, but that its product is *related to* the General Mills product, "Cheerios." *See Streetwise Maps, Inc. v. VanDam, Inc*., 159 F.3d 739, 745 (2d Cir. 1998) (in a discussion rejecting a finding of bad faith, distinguishing *International Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc*., 80 F.3d 749, 753–54 (2d Cir. 1996), which found bad faith, on the grounds that "Defendants [in *Streetwise*] did not copy an identical trademark as did Hilfiger").[1]

J-B Weld also repeats its claim that it did not intend to copy ITW's mark because of its custom of using "Weld" to associate products that engage in a "welding or bonding process" with its "most important trademark—the name J-B Weld itself." Doc. #50-1 at 13. But this explanation for its infringement is no more credible upon repetition. *See ITW*, 2019 WL 6765761, at *10-11 (collecting cases).

All in all, I remain unconvinced by J-B Weld's arguments concerning bad faith.[2] Nonetheless, "that a defendant has acted in bad faith is not sufficient, standing alone, to establish

---

[1] J-B Weld cites *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997), a trade dress infringement case where the Second Circuit explained that "simulating the design of a competitor's successful products is not bad faith, unless there is reason to draw an inference of an intention to deceive," *id*. at 383. This case is not implicated here where J-B Weld did not simulate the design of ITW's mark—it simply appropriated it outright with trivial changes to capitalization and spacing. There was reason to draw an inference of an intention to deceive in this case because J-B Weld was (or should have been) aware of ITW's registration and sought to market an identical product under the identical name, creating consumer confusion as to source. *See ITW*, 2019 WL 6765761, at *10-*11.

[2] Nor am I persuaded by J-B Weld's argument that my prior ruling included a finding of trademark dilution, Doc. #50-1 at 2, 12, which is a separate cause of action that implicates a separate section of the Lanham Act, 15 U.S.C. § 1125(c), and requires several additional factual findings, *ibid*. J-B Weld's impression appears to have been generated by my citation, as a "see also," to *Deere & Co. v. MTD Prod., Inc*., 41 F.3d 39, 42 (2d Cir. 1994) in my discussion of the potential for damage to the MUFFLER WELD mark itself by J-B Weld's infringing use here. *ITW*, 2019 WL 6765761 at *16. The citation to *Deere* was inserted not to make a finding of "dilution" but instead to illustrate the general point that equitably remediable irreparable harm has been found to arise from damage to the mark itself, *albeit* in the dilution context—which is not the context presented by this case (hence "see also"). For the avoidance of any doubt, I did not and do not make any findings as to trademark dilution in this preliminary injunction proceeding. Dilution involves the "the whittling away of an established trademark's selling power through its unauthorized use by others upon *dissimilar* products [like, for example,] a Kodak piano" *Mead Data Cent., Inc. v.* (continued…)

5

that a recall order is appropriate." *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 415 (S.D.N.Y. 2011). A recall is inappropriate where "the imposition of a recall may be unduly onerous, as where the defendant's products are widely distributed and particularly expensive to ship," or where "the probable benefit to the plaintiff from a recall may not outweigh the burden to the defendant . . . even if that burden is relatively light." *Perfect Fit. Indus*., 646 F.2d at 807.

These factors weigh in J-B Weld's favor. J-B Weld avers that its 32,000 units are spread out at more than 5,500 AutoZone stores across the country; moreover, its products are in the hands of AutoZone, a non-party who (at this stage) I presume had nothing to do with J-B Weld's infringement other than selling J-B Weld's product, but who will be put to significant cost and expense to disgorge 32,000 units of infringing product from their 5,500 locations back to J-B Weld—all in the middle of the holiday shopping season. Doc. #50-2 at 3-4 (¶¶ 11-17).

True enough, J-B Weld put itself into this position by continuing its product shipments as normal to AutoZone for a full three months after this litigation was commenced (the now-resolved motion for a preliminary injunction, requesting a recall, was filed the same day). Indeed, based on J-B Weld's estimation that it will take 12 to 16 weeks for AutoZone to sell its existing inventory, Doc. #50-1 at 3, it is a fair inference that substantially all of the inventory that

---

*Toyota Motor Sales, U.S.A., Inc*., 875 F.2d 1026, 1031 (2d Cir. 1989) (emphasis added), "or the tarnishment of the affirmative associations a mark has come to convey" by confusion with a product of lower quality, for example a cubic zirconium branded as "Tiffany Diamond." *Ibid*. The products here are functionally identical and, as I have held, the quality factor is neutral, *ITW*, 2019 WL 6765761, at *11–12; dilution is not in issue. Instead, my ruling found that the MUFFLER WELD mark would be *genericized* rather than *diluted* by its use on a functionally identical product. By "genericized," I mean that the use of a functionally identical junior mark on a functionally identical product moves the senior mark towards descriptiveness and away from suggestiveness, diminishing its strength as a mark and its value to the person who owns it. *See generally Abercrombie & Fitch Co. v. Hunting World, Inc*., 537 F.2d 4, 9-10 (2d Cir. 1976). This damage to the mark can be distinguished from the damage a mark incurs from dilution, which may make the mark more abstract and hence strong as conventionally understood ("Kodak" is more abstract when it is associated with both film and pianos, being dissimilar products) but weakens the mark's selling power (because if "Kodak" was branding pianos, customers would no longer associate Kodak with film quite as readily as they would otherwise).

is now in the possession of AutoZone was shipped there only *after* J-B Weld knew that it was facing ITW's lawsuit and a motion for a preliminary injunction specifically requesting a product recall.

Still, on the basis of J-B Weld's uncontradicted (if belated) submissions concerning the costs of recall in relation to its corporate size and the effect on non-party AutoZone if it must now immediately quarantine J-B Weld's product and ship it back to J-B Weld, I am convinced that a lesser measure than a mandatory immediate recall is warranted. ITW avers that it does not seek to have J-B Weld destroy its product or packaging, and it would be acceptable to ITW for J-B Weld instead to relabel its existing inventory of muffler sealant products at AutoZone stores and distribution centers in the same manner that J-B Weld proposes to do for the muffler sealant products that are now in J-B Weld's possession. Doc. #53 at 3.

This relabeling option would not be wholly costless, but allows for an alternative to outright recall, and as well as allowing for the existing products to be sold. Moreover, in light of the disruptions of the holiday season and the large number of product tubes and number of store locations, I will extend the compliance date, allowing J-B Weld approximately one month to issue a request to AutoZone either to recall and return to J-B Weld its muffler sealant products or to transmit replacement labels and request that AutoZone place these corrective labels on any tubes of J-B Weld's muffler sealant that are sold on and after February 1, 2020.

Insofar as J-B Weld risks losing goodwill with AutoZone by demanding either the return of the infringing product or the option to relabel it, that loss of goodwill was entirely self-inflicted, and it is not an equitable basis for relieving J-B Weld of its obligation to cease infringing activities with appropriate alacrity. *See Cherry River*, 38 F. Supp. 2d at 323. *Cf.*

7

*United States v. Int'l Bhd. of Teamsters*, 1998 WL 477969, at *2 (S.D.N.Y. 1998) (rejecting irreparable harm argument when harm was at least in part self-inflicted).

Nor am I persuaded that the transaction costs to J-B Weld of communicating with AutoZone and assuming any costs for return shipments—or printing new labels and working with AutoZone to re-label the remaining products—would be prohibitive. *See Perfect Fit Indus.*, 646 F.2d at 807 ("The order did not require Acme to take extensive action to retrieve the J-boards. The company need only have written its customers requesting a return of the boards and paid the cost of the return for those customers who complied").

I realize that modification of the injunction means some detriment to ITW. There will be additional sales in the interim of non-corrected J-B Weld muffler sealant at AutoZone stores, and these sales will impose on ITW some measure of irreparable harm. *See Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234–35 (2d Cir. 1999). But I conclude on the balance of equities that this revision to the terms of the preliminary injunction is the best accommodation of the parties' competing interests pending further litigation in this case. J-B Weld shall file a certification of compliance with the terms of the preliminary injunction by January 24, 2020, describing with specificity the manner in which it has complied.

In light of my modification of the recall provision of the injunction, I will deny J-B Weld's motion for a stay pending appeal. J-B Weld cannot show irreparable injury that outweighs the ongoing injury to ITW, and it cannot show a substantial possibility of success on appeal, and it cannot show that the public interest weighs in its favor. *See LaRouche*, 20 F.3d at 72. As to J-B Weld's request for a temporary stay so that it may seek a stay pending appeal from the court of appeals, I decline to enter a temporary stay in light of the additional compliance time

allowed under the terms of this order. That allows adequate time for J-B Weld to seek a stay from the Court of Appeals.

## CONCLUSION

For the foregoing reasons, the Court modifies its order of preliminary injunction to strike the entirety of point three of its order, which presently reads:

> "3. J-B Weld immediately shall recall all of its MufflerWeld-branded products from the marketplace, including from all AutoZone stores, along with all labels, signs, prints, packaging, and advertisements therefor; and,"

In its place, the Court substitutes the following language:

> "3. By January 21, 2020, J-B Weld shall advise AutoZone in writing of this Court's injunction and request that AutoZone either return existing inventory of J-B Weld's muffler sealant to J-B Weld or that AutoZone may sell its remaining inventory on or after February 1, 2020, only if corrective labels are affixed to each tube of product, and J-B Weld shall furnish corrective labels and instructions to AutoZone for this purpose. J-B Weld shall file a certification of compliance with the terms of the preliminary injunction by January 24, 2020, describing with specificity the manner in which it has complied."

In light of the Court's modification of the preliminary injunction and the additional time permitted for compliance as well as the Court's consideration of all of the several factors that bear on whether to grant a stay pending appeal, the Court DENIES J-B Weld's motion for a stay pending appeal.

It is so ordered.

Dated at New Haven this 20th day of December 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

9