UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ILLINOIS TOOL WORKS INC.,
    *Plaintiff*,

v.

J-B WELD COMPANY, LLC,
    *Defendant*.

No. 3:19-cv-01434 (JAM)

**ORDER GRANTING PARTIAL MOTION TO DISMISS**

    Plaintiff Illinois Tool Works Inc. ("ITW") has registered the term "MUFFLER WELD" as a word mark for a product it sells to seal cracks on car mufflers. In 2018, J-B Weld Company, LLC ("J-B Weld") began to sell its own formulation of muffler sealant using the word mark "MufflerWeld." In light of the similarity of these marks, I granted ITW a preliminary injunction to bar J-B Weld from continuing to market its product under the "MufflerWeld" name during the pendency of this litigation, concluding that ITW was likely to prevail on its claim that J-B Weld's product infringed its trademark. *See Illinois Tool Works Inc. v. J-B Weld Co., LLC*, 419 F. Supp. 3d 382 (D. Conn. 2019) ("*J-B Weld I*"), *as modified*, 2019 WL 7816510 ("*J-B Weld II*").

    In that decision, however, I reserved judgment on whether ITW had stated a claim that J-B Weld *counterfeited* its MUFFLER WELD mark. *See J-B Weld I*, 419 F. Supp. 3d. at 401 n. 14. Counterfeiting is "the 'hard core' or 'first degree' of trademark infringement." *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). One who counterfeits necessarily infringes a trademark, but one who merely infringes a trademark may not have counterfeited. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). Because I based my preliminary injunction on infringement, I left for another day ITW's claim that J-B Weld engaged in counterfeiting.

1

That day has now arrived. J-B Weld has moved to dismiss ITW's complaint solely insofar as it alleges that J-B Weld's product counterfeited, rather than simply infringed, the MUFFLER WELD mark. I conclude that the facts of this case as pled in the complaint are consistent only with infringement, not with counterfeiting, and will accordingly grant J-B Weld's motion to dismiss Count One of the complaint.

## BACKGROUND

The following facts are taken from the complaint and are assumed to be true solely for purposes of this motion to dismiss. Since 1977, ITW has owned a registered trademark for the words "MUFFLER WELD" when used "for paste sealer for repairing muffler holes." Doc. #1 at 7 (¶ 18); *see* MUFFLER WELD, U.S. Trademark Registration No. 1,064,459 (Apr. 26, 1977), *reproduced in* Doc. #1-2 at 4. Using this trademark, ITW has for many years sold a muffler sealant called MUFFLER WELD. ITW's MUFFLER WELD product is dispensed from a small black tub (from which the product is designed to be scooped) and appears in the center of a flame motif with "MUFFLER WELD" in capital white letters at the top of the package, with "Exhaust System Repair" immediately below it, and "MUFFLER-CAST" in smaller black letters immediately above and to the right; VersaChem, the house brand under which ITW sells MUFFLER WELD, appears on the face of the tub itself and in a small logo on the top left. Doc. #1 at 7.

Sometime in the last three years, J-B Weld began to sell its own paste sealer for repairing muffler holes, and it called its product "MufflerWeld." *Id*. at 8 (¶¶ 24-26). Unlike the ITW product, J-B Weld's product is dispensed directly from a squeezable tube; the packaging's colors are alternating bands of red and white except at the top of the tube, which has a black band on which the J-B Weld logo is superimposed. Immediately beneath the J-B Weld logo is the mark

2

"MufflerWeld," and immediately beneath "MufflerWeld" is the legend "Muffler Cement." Doc. #1 at 9.[1]

Below are side-by-side images of the two products as represented in the complaint. It is obvious that they don't look like one another, except, of course, for their near-identical name.




At the time it filed this lawsuit, ITW moved for a preliminary injunction, Doc. #4, seeking an order barring J-B Weld from marketing its muffler sealant using the mark

---

[1] The complaint in the lawsuit has 23 counts, and alleges not only a variety of statutory and common-law violations connected to the sales and marketing of J-B Weld's muffler sealant, but also (1) infringement of ITW's "Ultra Black, Ultra Grey, and Ultra Copper" trademarks by J-B Weld's "Ultimate Black, Ultimate Grey, and Ultimate Copper" products, (2) infringement of ITW's "Permatex" trademark by J-B Weld's "Perma-Lock" products, and (3) false and deceptive advertising of certain of J-B Weld's products as "Made in USA." *See generally* Doc. #1 at 29-44. J-B Weld's motion to dismiss solely concerns ITW's allegation that its muffler sealant constitutes counterfeiting under the Lanham Act (Count One), and this opinion should not be taken to comment on the remainder of the complaint, beyond confirming that ITW's complaint states a claim for trademark infringement (Count Two).

"MufflerWeld" and recalling the J-B Weld "MufflerWeld" products currently on the market. I granted ITW's motion for preliminary injunction, *see J-B Weld I*, 419 F. Supp. 3d 382 (D. Conn. 2019), subsequently modifying the terms of the injunction to permit J-B Weld to simply relabel its products already on the market in lieu of a recall, *see J-B Weld II*, 2019 WL 7816510 at *1.

My grant of a preliminary injunction rested on the likelihood that ITW could demonstrate that J-B Weld infringed its trademark. *See J-B Weld I*, 419 F. Supp. 3d. at 401. It may therefore be taken as established, that ITW's complaint states a plausible claim for trademark infringement (Count Two of the complaint). *Cf.* Docs. #56, #58, #61 (appeal of preliminary injunction, denial of stay by Court of Appeals, withdrawal of appeal). But "[b]ecause my conclusion that ITW has succeeded in showing likelihood of confusion satisfies the first prong of the preliminary injunction test, I [did] not make any determinations as to its counterfeit claim." *J-B Weld I*, 419 F. Supp. 3d. at 401 n. 14. I will now do so.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Supreme Court has explained, this "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid*. In other words, a valid claim for relief must cross "the line between possibility and plausibility." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In addition, a complaint cannot rely on just conclusory allegations. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). A complaint that makes a threadbare recital of the elements of a cause of action without including supporting factual allegations does not establish plausible grounds for relief. *Ibid*.

*What is counterfeiting?*

The Lanham Act defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; *see also* 15 U.S.C. § 1116(d)(1)(B)(i) (injunctive relief against use of "a counterfeit of a mark that is registered on the Principal Register"); 15 U.S.C. § 1117(b) (treble damages and attorney's fees against a defendant who "intentionally use[s] a mark or designation, knowing such mark or designation is a counterfeit mark"). A counterfeit is distinguished from a junior mark that simply infringes a senior mark, which requires merely that the junior mark be a "colorable imitation . . . likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127.

In *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524 (2d Cir. 1983), the Second Circuit interpreted these statutory terms to require a court, when determining whether counterfeiting has occurred, to examine the allegedly counterfeit product "from the standpoint of an average purchaser" and compare the product "with the registered mark imprinted on actual merchandise." *Id.* at 526. Importantly for this case, *Snyder* did not concern a trade dress registration, but rather a registration for a particular design (the Rolex "Crown") that appeared in distorted but recognizable form on the infringing products. This, the Second Circuit held, sufficed to constitute a "counterfeit." *Id.* at 533.

The complication here is that, as I have already found, "[t]his case features senior and junior marks that *are* identical; they are the same words pronounced the same way and differ on the packaging only by the removal of a space between the two (nonetheless obviously distinct) words and a trivial alteration in capitalization." *J-B Weld I*, 419 F. Supp. 3d at 393.[2] Because the

---

[2] J-B Weld reiterates its argument, made during the preliminary injunction proceedings, that even at the level of words the two marks are not "substantially indistinguishable" because J-B Weld's "MufflerWeld" capitalizes the first letters of the word rather than rendering the phrase in ALL CAPS, and because it actually consists of two
(continued…)

5

mark to be protected here is a word mark and not a service mark or trade dress, *cf. Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013) (no counterfeit even when service marks were textually identical because "stylized, powder-blue letters" were part of the registration of the senior mark), the marks are substantively identical.

ITW argues that it need not show anything more than that J-B Weld's mark is "identical" or "substantially indistinguishable" from its own; identical marks, it argues, are counterfeits. But ITW's argument reads out an important word in the Lanham Act's definition of a counterfeit mark: "spurious." Marks are not counterfeits solely by reason of their visual or aural indistinguishability. To be a counterfeit, a junior mark must *both* be substantially indistinguishable from the registered mark *and* be "spurious"—that is, indistinguishable in such a way that the junior mark "trick[s] the consumer into believing he or she is getting" the *product* denoted by the registered mark. *See Guess?*, 868 F. Supp. 2d at 242.[3]

In determining whether a customer would be so tricked, the Second Circuit explained in *Snyder*, it is the appearance of the mark on the "actual merchandise," rather than comparison of

---

marks, "Muffler" and "Weld," only the latter of which J-B Weld claims (preposterously, given its genericity) as a common-law mark, *see* Doc. #42-1 at 13. I have already addressed and rejected this argument in my preliminary ruling on infringement, *see J-B Weld I*, 419 F. Supp. 3d at 393, and now reject it in the context of counterfeiting. There is authority for the proposition that a spelling difference of two letters defeats a claim that two marks are "substantially identical," *see Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 290-91 (S.D.N.Y. 2007) ("Colddate" versus "Colgate"), but the minor differences of case or spacing apparent here are precisely the kind of trivial variations the Lanham Act contemplates when it permits a counterfeiting claim to be stated not merely when the marks are "identical" but also when they are "substantially indistinguishable." *See Associated Gen. Contractors of Am. v. Stokes*, 2013 WL 1155512, at *6 (E.D. Va. 2013) (addition of standard character marks does not foreclose marks being "substantially indistinguishable"). Even if I were to revisit my prior determination that the marks are identical, the marks are, at a minimum, substantially indistinguishable.

[3] There is stray *dicta* in one district court case cited by ITW to the effect that identical word marks alone constitute counterfeiting, *see Colgate-Palmolive*, 486 F. Supp. 2d at 291, but the principal case cited there for that proposition, *Consolidated Cigar Corp. v. Monte Cristi de Tabacos*, 58 F. Supp. 2d 188 (S.D.N.Y. 1999), rested its holding *both* on substantially indistinguishable word marks on the cigars in question *and* identical bands and boxes "with only minor differences that would not be apparent to an unwary observer." *Id.* at 196. By contrast in this case even the unwariest observer would—one sincerely hopes—distinguish between a tub for scooping and a tube for squeezing.

the marks in the abstract, that matters. *See Snyder*, 718 F.2d at 532-33; *see also Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC*, 2019 WL 274967, at *3 (S.D.N.Y. 2019) (concluding that counterfeiting occurs only where the substantially identical mark is used "to pass off the infringer's product as the original, rather than merely presented in a manner likely to confuse some consumers as to the origin or sponsorship of the infringer's product"); *Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc.*, 2015 WL 150756, at *2 (S.D.N.Y. 2015); *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 2015 WL 4468083, at *3 (S.D.N.Y. 2015).[4] To be a counterfeit, then, a mark must be indistinguishable on the merchandise on which it appears in such a way that customers believe they are getting one product when they are in fact getting another. *See Gucci America, Inc. v. Duty Free Apparel*, *Ltd.*, 286 F. Supp. 3d 284, 287 (S.D.N.Y. 2003).

### *Applying the definition of counterfeiting to the products in question*

Given, then, that the two marks in this case are substantially indistinguishable, ITW states a claim for counterfeiting if it is plausible (on the face of the complaint) that the products on which the senior and junior marks appear bear such similarities that the average customer would

---

[4] Although ITW relies on *Excelled Sheepskin* for the proposition that identical word marks, standing alone, constitute counterfeiting, the case does not quite stand for that proposition. The district court's opinion in *Excelled Sheepskin* was on a motion for reconsideration, and defendants do not appear to have introduced evidence prior to that motion for reconsideration to suggest that the competing products there were distinct, instead doing so belatedly only after they had lost on the principal question (which concerned the priority of the competing products). The *Excelled Sheepskin* Court refused—quite rightly—to take this new evidence into account on reconsideration, particularly because it represented a pirouette (if not a complete backflip) from the defendants' prior concession that the marks *and products* were entirely identical. *Excelled Sheepskin*, 2015 WL 4468083, at *2. Moreover, as I discuss below, the fashion context in which *Excelled Sheepskin* and the overwhelming majority of counterfeiting decisions exist involves product classes and marks that are more susceptible to the kind of "trick" confusion inherent to counterfeits than the products at issue here. *See GTFM, Inc. v. Solid Clothing Inc*., 2002 WL 1933729, at *2 (S.D.N.Y. 2002) (explaining, when rejecting outright appropriation of "05" mark by defendant as counterfeiting, that determination of "counterfeiting" requires analysis of how the marks "appear to consumers in the marketplace").

believe she was holding ITW's MUFFLER WELD product when she picked up a tube of J-B Weld's MufflerWeld product. I conclude they do not.

At the outset, the complaint makes clear that the MUFFLER WELD mark denotes a single, visually distinctive product. *See* Doc. #1 at 5 (complaint describing ITW's product as "a" paste "designed to repair and seal automotive mufflers"). The only visual similarity between that product and J-B Weld's product is their near-identical name, which, as I have explained, cannot alone render the product a counterfeit. *See GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011) ("to establish counterfeiting in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context"), *aff'd sub nom. GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014).

Given the dramatic differences in the products' appearance, from their distinct house marks, differing color schemes, differing sizes, and, above all, very different dispensing mechanisms, it is not plausible to conclude that average consumers would buy J-B Weld's product and think they got ITW's product. To be sure, it is highly likely that the two products would be confused, given their identical names and functions, but not to the extent that a customer experiencing the marks in commerce would believe that the infringing product *was* the senior product, the "trick" confusion fundamental to a counterfeit. *See Gibson Brands, Inc. v. John Hornby Skewes & Co.*, 2016 WL 7479317, at *7 (C.D. Cal. 2016) (presence of junior user's brand name on otherwise infringing guitars rendered the guitars infringing but not counterfeit).

This case is very similar (even if not, perhaps, substantially identical) to *Associated General Contractors of America v. Stokes*, 2013 WL 1155512 (E.D. Va. 2013). In *Stokes*, the registered and alleged counterfeit marks were identical word marks (the registered mark was

8

"AGC" and its infringing copy was "A.G.C."), but counterfeiting was not found because "viewing the allegedly offending documents as a whole, Defendant's accompanying logo bears significant stylistic and graphical differences from the mark used by AGC in similar documents." *Id*. at *6.[5]

Here, viewing the products as a whole, there are significant stylistic and graphical differences between the presentation of the word marks, sufficient to render the two marks—while substantially indistinguishable—not the "stitch-for-stitch" copy required to render the use of the indistinguishable marks spurious. *See Guess?*, 868 F. Supp. 2d. at 253; *see also Arcona, Inc. v. Farmacy Beauty, LLC*, 2019 WL 1260625, at *3 (C.D. Cal. 2019) (identical names of beauty products was not a counterfeit when products, including dispensing packages, were visually distinct); *Audemars*, 2015 WL 150756, at *2 (despite identical use of Royal Oak registered "octagonal bezel," defendant's use of house marks and "context of the entire watch" defeated counterfeiting claim); *GTFM, Inc. v. Solid Clothing Inc*., 2002 WL 1933729, at *2 (S.D.N.Y. 2002) (identical use of "05" mark not counterfeit when word marks appeared differently in the marketplace).[6]

---

[5] ITW attempts to distinguish *Stokes* by arguing that it involved "marks that are not identical to or substantially indistinguishable from the plaintiff's identical mark," Doc. #45 at 5. But *Stokes*, like this case, involved a registration for a "Typed Drawing" (there "AGC", here "MUFFLER WELD") that, the court further held, was substantially indistinguishable from the junior user's "A.G.C." *Stokes*, 2013 WL 1155512, at *5. Nonetheless, relying on some of the authorities discussed above, the court continued to hold that this substantially indistinguishable mark still did not constitute a counterfeit when viewed in the context of the product (there an advertisement) as a whole.

[6] Analysis of the commercial context in this case illustrates why ITW misplaces its reliance on *Tiffany & Co. v. Costco Wholesale Corp*., 127 F. Supp. 3d 241, 255 (S.D.N.Y. 2015). *See* Doc. #45 at 7. In *Costco*, the infringing user had used the "Tiffany" mark for a series of rings that were not produced by Tiffany & Co., but lacked an inscription of the Tiffany mark on their inner surface (a key distinguishing feature of a Tiffany ring among the cognoscenti) and were delivered in non-Tiffany packaging without Tiffany paperwork, *see Costco*, 127 F. Supp. 3d at 255. Although an expert in counterfeit detection opined that the absence of these unmistakable marks rendered the rings obviously not counterfeits, the court rejected this conclusion "as a matter of law" because it was obvious that consumers would be tricked into believing that the rings were Tiffany notwithstanding the absence of the mark on (continued…)

This analysis does not change even if one considers, as I did in my preliminary ruling on infringement, the aural or Internet commercial context. For sure, the probability of confusion in those contexts are higher than would occur in the classic retail store. *See J-B Weld I*, 419 F. Supp. 3d at 396. But it is implausible that a customer who searched on the Internet, or asked over the phone, for ITW's product would be confused into believing that the J-B Weld product she ultimately received was ITW's MUFFLER WELD. She might believe it was functionally or chemically equivalent to that product, or that ITW licensed the product, or that "muffler weld" was a generic name for muffler sealant. *See generally J-B Weld I*, 419 F. Supp. 3d at 403-05. But she would not believe she was getting ITW's black tub when she received J-B Weld's white tube. *See also Fischer v. Forrest*, 2017 WL 128705, at *13 (S.D.N.Y. 2017) (scheme to confuse customers into buying infringing rather than senior product by employing genuine marks of senior product established infringement, but did not render distinct products employed in that scheme counterfeits), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. 2017).

Even if J-B Weld sought in bad faith to capitalize on the established MUFFLER WELD brand to sell its own product, I cannot conclude on the basis of the products as represented in the complaint that J-B Weld sought to trick consumers into believing they were actually buying ITW's product. Accordingly, I conclude that ITW's counterfeiting claim (Count One of the complaint) must be dismissed.

---

the product itself. *Ibid.* This conclusion rests on the nature of the Tiffany mark, associated as it is with a wide range of jewelry, such that the average reasonable customer would be tricked into believing the infringing ring was a Tiffany ring, particularly because the critical inscription was hidden from the casual observer or wearer. *See also* J.R.R. TOLKEIN, THE LORD OF THE RINGS 48-51 (1955, 2004 ed.) (distinctive mark on ring in question not observable unless the object was abnormally hot, such that even experts did not realize ring's source or maker for years). Here, by contrast, the MUFFLER WELD mark is associated with a single product so visually distinct from the infringing product that consumers purchasing one would not be tricked into believing they purchased the other.

*Nature of Dismissal*

As ITW has requested leave to amend its complaint in the event that I dismiss Count One, it remains for me to determine whether I will dismiss Count One with prejudice or without. *See* Doc. #45 at 3 n. 1. "Without doubt, this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). But ITW has not explained how the defects identified in this opinion might be cured, save by perhaps inserting the word "spurious" into its complaint. *See* Doc. #45 at 3 n.1 (ITW opposition to motion to dismiss). The Second Circuit has indicated that "when a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny leave to amend." *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) (quoting *Porat*, 464 F.3d at 276). In particular, where, as here, "plaintiffs requested leave to amend in a cursory manner without any explanation for how they would be able to cure the complaint's defects," a district court may simply deny leave to amend by dismissing the offending complaint (or here, count) with prejudice. *Ibid*.

I do not fault ITW for failing to give a satisfactory explanation of how it might amend the complaint, because I myself cannot see what additional facts might be adduced to make its counterfeiting claim satisfy the requirements of the Lanham Act: the visual distinctions between the only two products in question (ITW's MUFFLER WELD and J-B Weld's MufflerWeld) conclusively foreclose a counterfeiting claim. "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 62 (2d Cir. 2016). Particularly because ITW has stated a claim for infringement—not to mention bad faith, *see J-B Weld I*, 419 F. Supp. 3d at 398; *see also J-B Weld II*, 2019 WL 7816510, at *2–3—it would be unproductive to engage in

11

another round of motion practice over counterfeiting claims given the near-certainty that any proposed amendment to restore this particular claim would be futile. I will therefore dismiss Count One with prejudice.

## CONCLUSION

For the forgoing reasons, J-B Weld's motion to dismiss Count One of the Complaint is GRANTED, and Count One of the Complaint is DISMISSED WITH PREJUDICE. J-B Weld shall file its answer and any counterclaims not later than **July 17, 2020**. It is so ordered.

Dated at New Haven this 26th day of June 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge