UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ILLINOIS TOOL WORKS INC., *Plaintiff*, | |
| v. | No. 3:19-cv-1434 (JAM) |
| J-B WELD CO., LLC, *Defendant*. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This is a lawsuit between two companies that sell chemical bonding products—like epoxies, adhesives, threadlockers, gasket makers, and silicone sealants—that someone might buy at a hardware store to fix their car or for other mechanical projects. The plaintiff is Illinois Tool Works Inc., and through its Permatex division it has been in the bonding product business for many decades. The defendant is J-B Weld, LLC, a relative newcomer to the business.

In this lawsuit Illinois Tool broadly claims that J-B Weld has infringed its trademarks and that it falsely advertises its products as "Made in USA." J-B Weld in turn has moved for partial summary judgment on these claims.

First, J-B Weld seeks summary judgment as to most of Illinois Tool's trademark-related claims on the grounds that these claims are time-barred by the statute of limitations and laches. I agree, because the record conclusively shows that Illinois Tool waited too long before filing its lawsuit.

Second, J-B Weld seeks summary judgment on Illinois Tool's false advertising claims. I do not agree, because the record shows that genuine fact issues still remain on the issues of whether Illinois Tool has standing and whether J-B Weld's advertising of "Made in USA" is

1

false. Accordingly, I will grant in part and deny in part J-B Weld's motion for partial summary judgment.

## BACKGROUND

This litigation largely involves competition between Illinois Tool and J-B Weld in the sale of two kinds of bonding products known as threadlockers and gasket makers. Illinois Tool has long sold threadlockers under the trademark "Permatex."[1] Meanwhile, J-B Weld more recently began in 2010 to sell theadlockers under a somewhat similar brand name of "Perma-Lock."[2]

Likewise, Illinois Tool has long sold gasket makers under trademarks like "Ultra Black," "Ultra Grey," and "Ultra Copper."[3] Meanwhile, J-B Weld more recently began in 2014 to sell gasket makers under somewhat similar names of "Ultimate Black" and "Ultimate Grey."[4]

At first, the J-B Weld threadlocker and gasket maker products sold poorly.[5] But sales eventually blossomed. By 2019, its sales of Perma-Lock threadlockers had grown five-fold since the year the brand was launched, and its sales of Ultimate-named gasket makers had grown twenty-fold.[6]

Illinois Tool filed this federal lawsuit in 2019 alleging numerous trademark-related claims against J-B Weld's "Perma-Lock" and "Ultimate" products. Specifically, Illinois Tool alleges multiple claims for unfair competition and trademark infringement under the federal Lanham Act, 15 U.S.C. § 1114(1), § 1125(a).[7] It also alleges Connecticut state law claims for

---

[1] Doc. #1 at 14–17 (¶¶ 52–57).
[2] Doc. #78 at 14 (¶ 30).
[3] Doc. #1 at 10–12 (¶¶ 35–40).
[4] Doc. #93 at 1 (¶ 1).
[5] Doc. #94-9 at 4–5.
[6] Doc. #93 at 11–12 (¶ 25); Doc. #78 at 16–17 (¶ 39).
[7] Doc. #1 at 31–32 (¶¶ 128–35) (Count VII) (trademark infringement for Ultimate Black); 33–34 (¶¶ 141–48) (Count IX) (trademark infringement for Ultimate Grey); 34–35 (¶¶ 154–61) (Count XI) (trademark infringement for Ultimate Copper); 36–37 (¶¶ 167–72) (Count XIII) (unfair competition claim for Ultimate products); 38–39

common law trademark infringement,[8] for common law unfair competition,[9] and for violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42-110a.[10]

Beyond these trademark-related claims, Illinois Tool alleges separate claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), under CUTPA, Conn. Gen. Stat. § 42-110a, and under the Connecticut common law of unfair competition.[11] According to Illinois Tool, J-B Weld has falsely advertised many of its products as "Made in USA" when in fact this is not true for significant components of its bonding products.[12]

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).[13]

---

(¶¶ 181–88) (Count XVI) (trademark infringement for Perma-Lock); 39–40 (¶¶ 189–94) (Count XVII) (unfair competition claim for Perma-Lock).
[8] *Id.* at 32–33 (¶¶ 136–40) (Count VIII) (Ultimate Black); 34 (¶¶ 149–53) (Count X) (Ultimate Grey); 35–36 (¶¶ 162–66) (Count XII) (Ultimate Copper); 41 (¶¶ 199–203) (Count XIX) (Perma-Lock).
[9] *Id.* at 38 (¶¶ 177–80) (Count XV) (Ultimate products); 41–42 (¶¶ 204–07) (Count XX) (Perma-Lock).
[10] *Id.* at 37 (¶¶ 173–76) (Count XIV) (Ultimate products); 40 (¶¶ 195–98) (Count XVIII) (Perma-Lock).
[11] *Id.* at 42–43 (¶¶ 208–19) (Count XXI) (Lanham Act); 43–44 (¶¶ 220–24) (Count XXII) (CUTPA); 44 (¶¶ 225–28) (Count XXIII) (common law).
[12] *Id.* at 4 (¶¶ 5–6); 19–27 (¶¶ 69–93).
[13] When quoting from rulings of other courts, this ruling omits internal quotation marks, citations, brackets, and ellipses unless otherwise noted. In addition, to the extent that this ruling relies on documents that have been filed under seal, the Court concludes that no compelling reason justifies sealing of those portions of this Court's ruling that cite and quote from documents filed under seal.

### *Statute of limitations and laches for trademark-related claims*

J-B Weld argues that Illinois Tool's trademark-related claims are time-barred. Specifically, it argues that the state law claims are barred by the statute of limitations and that the federal Lanham Act claims are barred by laches. I will start with the state law claims, then turn to the Lanham Act claims.

The Connecticut state law claims for common law trademark infringement, for common law unfair competition, and for CUTPA are all subject to a three-year statute of limitations. *See* Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); Conn. Gen. Stat. § 41-110g(f) (CUTPA: "An action under this section may not be brought more than three years after the occurrence of a violation of this chapter.").

Illinois Tool filed this lawsuit in September 2019. The summary judgment record shows that J-B Weld launched Perma-Lock in 2010 and the Ultimate line in 2014.[14] Far more than three years elapsed before Illinois Tool filed this lawsuit, and so the statute of limitations precludes its state law claims.

Illinois Tool makes no serious effort to refute this point. It briefly suggests that the three-year clock started not when the J-B Weld products hit the market, but only after some other trigger, like when the products reached a certain market share.[15] But these statutes of limitations are "occurrence" statutes, meaning that they begin running at the moment of the act or omission

---

[14] Doc. #93 at 1 (¶ 1) (admitting that J-B Weld "launched" its Ultimate product line in 2014 but disputing that these products "competed in the same markets for the same customers since that time"); 5–6 (¶ 8) (denying that J-B Weld "launched" its Perma-Lock products in 2010 because "J-B Weld fails to support these facts with any documentary evidence"). To the extent that Illinois Tool objects that J-B Weld has not provided "any documentary evidence," the record shows that this fact is supported by the competent affidavit of J-B Weld's chairman and chief executive officer since 2008, *see* Doc. #78 at 14 (¶ 30), and Illinois Tool has not introduced any evidence to controvert this affidavit evidence.
[15] Doc. #92 at 28.

4

complained of and not at some later date of discovery or convenience. *See Breiner v. Stone*, 122 F.3d 1055 (2d Cir. 1997) (unpub.); *Khan v. Yale Univ.*, 511 F. Supp. 3d 213, 226 (D. Conn. 2021) (§ 52-577); *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 301 F. Supp. 3d 328, 371 (D. Conn. 2018) (CUTPA).

Nor does Illinois Tool argue that the continuing-course-of-conduct doctrine applies. *See RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 410 F. App'x 362, 366–67 (2d Cir. 2010) (rejecting continuing-course-of-conduct doctrine for trademark-related claims); *Khan*, 511 F. Supp. 3d at 227 (noting how continuing-course-of-conduct doctrine applies only if there is an ongoing duty from defendant to plaintiff). Accordingly, I will grant J-B Weld's motion for summary judgment as to the state law trademark-related claims involving the Perma-Lock and Ultimate line of products.

As for the federal Lanham Act claims, it is well settled that the Lanham Act does not have a statute of limitations. *See Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018). Instead, however, a claim under the Lanham Act may be time-barred by reason of the equitable doctrine of laches. *See ibid.* Under laches, a plaintiff may not sue for trademark infringement if the record shows "that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980); *see also RBC Nice Bearings*, 410 F. App'x at 364 (same).

To decide whether laches bars a claim under the Lanham Act, courts start off by a benchmark reference to what is the analogous state law limitations period that would govern a claim for fraud. *See Excelled Sheepskin*, 897 F.3d at 419; *Conopco, Inc. v. Campbell Soup Co.*,

5

95 F.3d 187, 191–92 (2d Cir. 1996). If a plaintiff has waited beyond the statute of limitations that would govern an analogous state law claim for fraud, then the burden shifts to the plaintiff to show why it would be inequitable for the complaint to be dismissed on grounds of laches. *See Conopco*, 95 F.3d at 191.

The statute of limitations for fraud under Connecticut law is three years. *See* Conn. Gen. Stat. § 52-577; *RBC Nice Bearings*, 410 Fed App'x at 364–65 (applying Connecticut's 3-year fraud statute as benchmark for trademark laches defense). Because I have already concluded as discussed above that this action was filed beyond Connecticut's three-year statute of limitations, the burden therefore falls on Illinois Tool to show why it would be inequitable to dismiss its Lanham Act claims.

Illinois Tool has not carried its burden. For starters, it is undisputed not only that J-B Weld's Perma-Lock and Ultimate products were on the market more than three years before Illinois Tool filed this lawsuit but also that Illinois Tool actually *knew* about these products more than three years before filing this lawsuit in September 2019. For instance, in 2015, Illinois Tool employees prepared a slide presentation about J-B Weld, mentioning Ultimate and Perma-Lock by name and describing each as a "Competitive Threat."[16] In May 2016, Illinois Tool even commissioned a survey asking customers whether they preferred "J-B Weld Ultimate Black" or Illinois Tool's "Permatex Ultra Black."[17] So by September 2019, Illinois Tool certainly knew about J-B Weld's rival products for more than three years.

Unable to deny that it knew about J-B Weld's products, Illinois Tool suggests that it was justified in waiting to sue until J-B Weld grew its market share. But that gets things backwards. The very point of laches is not for the wait-and-see convenience of a plaintiff but to avoid unfair

---

[16] Doc. #94 at 4 (¶ 18); Doc. #94-9; Doc. #93 at 9 (¶ 17).
[17] Doc. #80 at 2, 22.

prejudice to a defendant. Laches requires a plaintiff to file suit for a known trademark infringement before the defendant foreseeably commits continuing resources year after year to promoting a product and entrenching itself in the market. *See Conopco*, 95 F.3d at 192 (finding undue prejudice to defendant where plaintiff waited "over five years" to assert claim during which time the defendant "committed massive resources to best exploit a marketing strategy which it chose a half dozen years ago" and where the delay "precluded the possibility that [the defendant] could effectively adopt an alternative marketing position").

Here, more than three years elapsed, and it is undisputed that Illinois Tool filed this lawsuit without any prior warning to J-B Weld of its view that the threadlocker and gasket maker products were infringing Illinois Tool's trademark rights.[18] While Illinois Tool sat on its hands, not only did J-B Weld's sales grow, but it expanded its brands into more stores and launched new variants (like "Perma-Lock *Green*").[19] So the fact that J-B Weld had low sales in 2015 is not an *excuse* for delaying, but rather a *reason why* Illinois Tool should have acted then.

Illinois Tool's citations do not say otherwise. Those cases refer to the "progressive encroachment" doctrine. Under this doctrine, the laches clock does not start until "the likelihood of confusion looms large." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002). But that rule is just a reminder that not every use of a rival's trademark violates the Lanham Act. The use must also cause confusion. Thus, if a defendant "begin[s] its use of the mark, [then] redirect[s] its business so that it more squarely compete[s] with [the] plaintiff and thereby increase[s] the likelihood of public confusion," the clock might not start running until the later shift. *Id.* at 70.

---

[18] Doc. #93 at 11 (¶ 24).
[19] Doc. #75-2 at 10–11 (¶¶ 17, 22); Doc. #78 at 14 (¶ 34); Doc. #93 at 12 (¶ 29).

7

But nothing like that happened here. Since at least early 2016, the rivals' products directly competed, as Illinois Tool well knew. Since then, the record does not suggest that J-B Weld did anything to increase the likelihood of public confusion. It simply grew its sales. Any confusion loomed as large from the start as it did later on.

As the Ninth Circuit has noted, "[a] junior user's growth of its existing business and the concomitant increase in its use of the mark do not constitute progressive encroachment." *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006); *see also Argus Research Grp., Inc. v. Argus Media, Inc.*, 562 F. Supp. 2d 260, 273 (D. Conn. 2008) (Kravitz, J.) (explaining how progressive encroachment doctrine turns on change over time in likelihood of confusion rather than change over time in market share).

Illinois Tool additionally argues that there is a genuine fact issue of bad faith—that J-B Weld intentionally violated its trademark such that it may not rely on a laches defense. *See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) (explaining how a defendant's intentional trademark infringement precludes an equitable defense of laches). But, alas, there is no evidence of an *intentional* trademark violation.

To begin, J-B Weld's packaging features a large "J-B Weld" logo (in contrast to the large "Permatex" logo appearing on Illinois Tool's product), and the packaging self-evidently differs from Illinois Tool's in other ways as apparent from the images below.[20]

---

[20] Doc. #1 at 15 (¶ 53) (Permatex threadlocker product as shown in image); 18 (¶ 61) (J-B Weld threadlocker product as shown in image).



Whether arguments could be made to suggest a risk of confusion, the similarities in packaging fall well short of establishing bad faith. See *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 125 (2d Cir. 2001) ("[B]y placing its labels prominently upon its bottles, [the defendant] negated an inference of intent to deceive consumers as to the source of its product.").

Illinois Tool argues that J-B Weld's bad faith intention may be inferred from its choice of similar names ("Perma-Lock" vs. "Permatex" and "Ultimate" vs. "Ultra"). But the limited similarity of names has largely to do with durability of function—the core value of any bonding product—and is not meaningfully suggestive of bad faith. *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995) ("a mark that reflects the product's characteristics" suggests good faith, not bad faith). As the Second Circuit has noted, "[t]he intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive

9

purchasers as to the source of the product." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998).

Illinois Tool objects to a ruling on the bad faith issue absent completion of discovery. But Illinois Tool consented to J-B Weld's motion to stay discovery pending my ruling on J-B Weld's summary judgment motion.[21] And under the federal rules, parties may move for summary judgment before the end of discovery. *See* Fed. R. Civ. P. 56(b). Thus, "[t]he mere fact that discovery is incomplete is not enough to prevent summary judgment." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019). Instead, if a party thinks that it needs more facts "to justify its opposition," it must explain why in an "affidavit or declaration." Fed. R. Civ. P. 56(d). And it must give specifics: what it hopes to find and how that will help. "[A] bare assertion that the evidence … is in the hands of the defendant is insufficient." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016).

Illinois Tool has not said what evidence it hopes to find or how that evidence will help, let alone has it said so in an affidavit or declaration. As to the issue of bad faith, it is therefore proper to rule on the basis of the record before me and not based on speculation that depositions or other discovery might turn up some "smoking gun" of bad faith. Accordingly, as to the J-B Weld threadlocker and gasket maker products, I will grant J-B Weld's motion for summary judgment on the defense of laches against Illinois Tool's Lanham Act trademark claims.

### *False advertising claims as to "Made in USA"*

J-B Weld seeks summary judgment on Illinois Tool's false advertising claims. First, it argues that Illinois Tool has no standing to complain about J-B Weld's "Made in USA" advertising. According to J-B Weld, because Illinois Tool does not advertise its *own* products as

---

[21] Doc. #84.

10

being "Made in USA," this means that—as a matter of law—Illinois Tool has no standing to complain about J-B Weld's marketing of its own products as "Made in USA."

This argument makes little sense. What if J-B Weld falsely advertised that its bonding products cure cancer or stopped global warming? If J-B Weld's sales skyrocketed at the expense of its competitors as a result of these false claims, would only those competitors who also claim that their products cure cancer or stop global warming be allowed to complain? What if *none* of J-B Weld's competitors made the same outlandish claim—does no one then have standing to complain?

The law is that any of J-B Weld's competitors who can prove lost sales proximately caused by J-B Weld's false advertising claim have standing to complain. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). There is no sub-rule that only a plaintiff competitor who *truthfully* makes the same type of advertising claim as a defendant who *falsely* makes such a claim has standing to complain.

J-B Weld relies on *New Colt Holding Corp. v. RJG Holdings of Florida, Inc.*, 312 F. Supp. 2d 195 (D. Conn. 2004), a case in which Judge Dorsey concluded on the basis of a full summary judgment record that a defendant had no standing to press a counterclaim for false advertising against a plaintiff who advertised its revolvers as "Made in the USA," because "[a]ssuming Plaintiffs' revolvers are not of domestic origin, there is no evidence to suggest that if consumers knew the truth of its origin they would cease to care about the revolvers['] domestic origin and purchase Defendants' foreign produced revolvers." *Id.* at 234.

It appears that *New Colt* was decided on the basis of a full summary judgment record. Here, by contrast, discovery remains ongoing, and (unlike Illinois Tool's bad faith claim) it is far from speculative to conclude that Illinois Tool has not suffered lost sales due to J-B Weld's

11

"Made in USA" claim. J-B Weld features this claim very prominently on its packaging, presumably because it understands the importance of this type of claim to consumers' purchasing decisions. *See Baum v. J-B Weld Co.*, 2020 WL 7396539, at *8–*9 (N.D. Cal. 2020) (discussing why "Made in USA" labeling generally matters to consumers). Therefore, it is premature to conclude at this time that Illinois Tool has no standing to challenge J-B Weld's "Made in USA" advertising claim. *See Hilsinger Co. v. Kleen Concepts, LLC*, 2017 WL 3841468, at *8 (D. Mass. 2017) (denying defendant's motion for summary judgment on plaintiff's Lanham Act false advertising claim because of evidence that defendant's "Made in USA" claim caused plaintiff to lose sales).

Turning to the merits, J-B Weld argues that there is no genuine fact issue over whether its "Made in USA" claim is false. But it does not dispute for purposes of this motion that items such as the tubes, the caps, and the syringe applicators for J-B Weld's bonding products are not made in the United States. No matter, says J-B Weld, because the Lanham Act does not apply to acts that cause confusion about the source of "container" items like tubes, caps, and syringes, as distinct from the underlying "good" such as the chemical bonding product within the container. J-B Weld relies on the wording of the Lanham Act which states that one may not use a "false designation of origin" "in connection with any goods … or any container for goods" if that designation "is likely to cause confusion, or to cause mistake, or to deceive … as to the origin … [of the] goods." 15 U.S.C. § 1125(a)(1). Thus, according to J-B Weld, the Act explicitly distinguishes between "goods" and a "container for goods," but applies only if there is confusion about the source of the "goods."

Even if J-B Weld is right about the Act's distinction between "goods" and "containers," the problem for J-B Weld is that there is a genuine fact issue about whether the tubes, caps, and

12

syringe applicators are "goods" or "containers." For example, there is a fact issue about whether the syringe that a consumer must use to apply a chemical bonding product is a part of the "good" rather than just part of the "container." Just what is a "good" rather than a "container" is highly fact-laden and context specific. An item can be both: "[A] classic glass Coca-Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 215 (2000).

J-B Weld further argues that even if the tubes, caps, and syringes are "goods" that are covered by the Act, its customers realize that the "Made in USA" claim does not refer to those items. Maybe so but maybe not. The evidence conflicts. For example, the syringes are standalone items that must be actively handled (see photo below). A customer might think that they are a core part of the product and covered by the "Made in USA" label.



The caps, too, are vital: they "keep[] the two components of the epoxy product separated until they are dispensed."[22] And they are specially designed to prevent waste.[23] Indeed, J-B Weld

---

[22] Doc. #94-4 at 7.
[23] *Ibid*.

13

singles out this feature on its packaging—right next to its "Made in USA" label. A customer who sees the two claims next to each other might well think that they are related.



J-B Weld's responses are not persuasive. First, it notes that staff lawyers at the FTC investigated its use of the label but decided not to sue. But the letter explaining the FTC staff's decision is thinly reasoned, and the discretionary enforcement decisions of FTC staff members do not bind federal courts.

J-B Weld also argues that Illinois Tool has failed to offer any consumer survey evidence. But Illinois Tool has reserved its right to do so, and the discovery period is not yet done. Nor does J-B Weld show that a plaintiff *must* rely on survey evidence to survive summary judgment. Illinois Tool need only offer some evidence, of any type, that creates a genuine dispute about whether J-B Weld's "Made in USA" advertising is false. It has done that, and so its false advertising claims survive.

## Conclusion

The motion of defendant J-B Weld for summary judgment (Doc. #74) is GRANTED IN PART and DENIED IN PART. The Court GRANTS summary judgment to J-B Weld on Counts VII–XX. The Court DENIES summary judgment on Counts XXI–XXIII.

It is so ordered. Dated at New Haven this 22nd day of September 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge